IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2012

**STATE OF TENNESSEE v. DUSTIN LEE SWANEY**

**Appeal from the Circuit Court for Blount County**
**No.C20606    Tammy Harrington, Judge**

**No. E2012-01192-CCA-R3-CD - Filed March 27, 2013**

The Defendant-Appellant, Dustin Swaney, entered a plea of guilty to abuse of a child under the age of eight, a Class D felony, with the court to determine the length and manner of service of sentence. After a sentencing hearing, Swaney was sentenced to three years and six months' confinement. The sole issue presented for our review is whether the trial court abused its discretion in imposing sentence. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

J. Liddell Kirk, (on appeal) Knoxville, Tennessee; and Raymond M. Garner, District Public Defender  (at guilty plea and sentencing), for the Defendant-Appellant, Dustin Swaney.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Michael L. Flynn,  District Attorney General; and Betsy Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Based on the affidavit of complaint, we discern the following facts in support of Swaney's conviction of child abuse:

Affiant through investigation found that the defendant resides . . . . with his nine month old daughter[,] [C.S.][1], along with another child and girlfriend. The defendant did not properly protect or care for the nine month old daughter[']s needs and welfare[,] and she became injured[,] requiring medical attention and was admitted into the intensive care unit at Children's Hospital in Knoxville, Tennessee. The child had multiple bruises all over her body and during this date had an injury to her head and abdominal area from an incident that occurred at the family residence . . . . During medical treatment, the child was found to be malnourished and dehydrated[,] and medical staff advised the affiant that these conditions have occurred over a period of time. All of the above occurred in the City of Maryville, Blount County, Tennessee and while the child was in the care of the defendant.

**Sentencing Hearing.** At the May 9, 2012 sentencing hearing, the State entered into evidence its notice of enhancement factors, the presentence report, the victim's medical records, and two prior convictions for driving on a revoked driver's license and driving without a driver's license. In addition, the State argued that Swaney's sentence should be enhanced because the victim was particularly vulnerable because of age, the injuries in this case were particularly great, and based on Swaney's criminal history.

The presentence report revealed that, Swaney, age twenty-seven, graduated from high school and had an inconsistent work history. Other than a period of five months in 2000, Swaney had been unemployed for seven years. He explained that he lived with his mother and step-father after graduation and did not do much of anything other than "'play video games and some occasional work' for his uncle." He had been fired from three jobs because he failed to show up for work. In 2006, he met his girlfriend, and they eventually had children and moved into their own apartment.

Swaney and his girlfriend had three children, the victim, her three-year-old brother, and another daughter who died as a result of "SIDS." Swaney reported that the Department of Children's Services (DCS) was involved in the investigation of his daughter's death and that his son was taken from them for two weeks. Swaney further reported that a DCS worker inspected their home for two years following the death of his daughter. Asked how he supported himself, Swaney explained that his girlfriend worked at Walmart and "paid for things," while he "stayed home, watched the kids, and played video games." Swaney denied abusing the victim and blamed the abuse on his three-year-old son. He did not know anything about the dehydration or malnutrition reported by the doctor.

---

[1]In keeping with this Court's policy regarding victims who are minors, we will refer to the victim in this case by initials.

Sergeant Ronnie Pryor of the Criminal Investigations Division of the Maryville Police Department testified that he arrived at East Tennessee Children's Hospital in Knoxville after the victim was transported there on January 24, 2012. Sergeant Pryor said the victim was malnourished and dehydrated, with fresh, red, bruising on her face. The victim also had bruises on her arms, stomach, and legs. On his second visit to the hospital, the victim was still unable to hold up her head or sit up on her own. Sergeant Pryor was advised that the victim "had a bleed on the brain" and bruising, which were both inconsistent with falling. He also determined that the victim "had an abdominal injury going from the belly button all the way around to the back," which he said was consistent with "being squeezed." Pryor said the victim was fed with a feeding tube because she was unable to hold food down. He said the victim "was in the lower five percentile . . . for [her] weight for that age." He identified photographs taken of the victim at the hospital, which were admitted into evidence.

Pryor said Swaney told him "that [the victim] had fallen off the bed." Swaney showed Pryor where he had found the victim, which was "[a]pproximately three and a half to four feet from the edge of the bed." Pryor testified that Swaney's explanation was not "plausible." Swaney denied injuring the child and blamed her injuries on his three-year-old son. Pryor said Swaney eventually admitted that he was irritated because he was playing video games at the time that the child was injured. Pryor did not consider Swaney to be remorseful. His investigation revealed the child's mother was out of town the evening the victim received the injuries, and he concluded Swaney caused the injuries. On cross-examination, Pryor admitted that Swaney was the person who called 911 and that he cooperated with Pryor and answered his questions.

Randall Ryan Kidd, the victim's uncle, testified that the victim had been in his care since she was hospitalized in this case. Kidd and his wife, the twin sister of the victim's mother, had almost weekly contact with the victim since her birth. He said that prior to January 24, 2012, the victim was "generally happy." The victim was able to sit up and hold her head up. He said she was in the hospital "between a week and a half and two weeks," and upon her release, the victim weighed "twelve or twelve and a half pounds." Kidd testified that if Swaney were not incarcerated for an extended period of time, Kidd would be fearful for the victim and her brother "especially while [Kidd was] at work and not at home."

On re-direct, Kidd said that the victim's mother and Swaney lived with Kidd and his family some prior to and after the victim's birth, and that Swaney and the child's mother "always argued about who was going to do what for the baby, who was going to watch them, who was going to change diapers." He said Swaney "had a job at Walmart for a week or two and then quit" and would play "a lot of video games" and sleep in "until about 2:00 or 3:00 in the afternoon." Kidd said he "tried to get [Swaney] several jobs and he never showed up."

Kidd stated Swaney's failure to work had "always been an issue" between him and Swaney because Kidd believed "somebody needs to get a job to support these kids."

Marcella Eisenhower, Swaney's mother, testified on his behalf. She said he "went through the slow classes" at school and his reading and writing were "not that good." She said he had "been on a lot" of medication because "[h]e's got bad nerves" and had "anxiety attacks." She said Swaney "hasn't worked a lot" and he, his son, and his son's mother lived with her before the victim was born. She stated she helped Swaney get his driver's license back, and he could live with her upon his release from jail. On cross-examination, Eisenhower said she never went to the hospital to see the victim and therefore never saw her bruises, and "[n]obody told [her]" the victim had been unable to sit up or lift her head.

As a rebuttal witness for the State, Sergeant Pryor testified that on the three occasions he spoke with Swaney, he never appeared anxious, never shook, and never showed any signs of an anxiety. Pryor described Swaney's demeanor as "detached" and "very calm." Pryor said he had attended all of Swaney's court hearings and acknowledged that Swaney "doesn't show any signs of nervousness, doesn't show anxiety or anything of that nature."

The State argued for a four-year sentence of confinement. Defense counsel said Swaney had served one hundred three days in jail, and he requested a two-year sentence with Swaney serving a total of one hundred twenty days in jail "with the balance [to] be served on probation." In the court's colloquy with defense counsel, it clarified that Swaney entered a guilty plea to child abuse, a Class D felony, and not child neglect, which would have been a Class E felony.

Prior to imposing sentence, the trial court applied two enhancement factors: (1) the child was "particularly vulnerable . . . due to its health condition at the time of the offense," and (2) "the personal injuries inflicted upon . . . the victim w[ere] particularly great." The court found no mitigating factors, because it determined that Swaney's untruthfulness to investigators rendered him "uncooperative." After a thorough review of the arguments and applicable law, the trial court denied probation and imposed a sentence of three years and six months, to be served in confinement. Swaney then filed a timely notice of appeal.

## ANALYSIS

The issue presented in Swaney's brief is whether "the trial court erred in its sentencing determination of the length and manner of service of the sentence." Because Swaney failed to include a copy of the transcript of the guilty plea submission hearing, the State contends that Swaney has waived appellate review. Waiver notwithstanding, the State argues the trial court properly imposed a sentence of confinement.

The State correctly points out that there is no transcript of the guilty plea hearing in the record on appeal. However, "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in Bise." State v. Caudle, 388 S.W.3d 273, 279-80 (Tenn. 2012) (citing State v. Bise, 380 S.W.3d 682 (Tenn. 2012)). While noting that appellate courts had the authority to supplement the record pursuant to Tennessee Rule of Appellate Procedure 24(e), the Tennessee Supreme Court did "not mean to suggest that the Court of Criminal Appeals must or should order supplementation of the record in every case where the appellant fails to provide a transcript of the hearing on a guilty plea." Id. Instead, "[s]upplementation may be considered on a case-by-case basis and should be ordered only if the record is otherwise inadequate to conduct a meaningful appellate review on the merits of the sentencing decision." Id. "If, however, the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court." Id. (citing State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991)). The court concluded that "the mere fact that the transcript of the submission hearing was not made a part of the record on appeal should not preclude review under the standard adopted in Bise." Id. We determine the record is adequate for a meaningful review and will proceed to address the merits of Swaney's appeal.

We review sentencing issues under an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act. Bise, 380 S.W.3d at 707. This standard of review is also applicable to "a trial court's grant or denial of either probation or some other form of an alternative sentence." State v. Caudle, 388 S.W.3d 273, 279-80 (Tenn. 2012) ("[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including questions related to probation or any other alternative sentence."). Here, Swaney entered a guilty plea to a Class D felony, and the parties stipulated that Swaney was a Range I, standard offender. As such, Swaney was subject to a sentence range between two to four years. T.C.A. § 39-15-401(a), -40-35-111(b)(4), -40-35-101. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing sentence in this case, the three-year and six-month sentence imposed by the trial court is presumed reasonable.

A trial court, when sentencing a defendant or determining alternative sentencing, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2010); see State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

Tennessee Code Annotated section 40-35-102(6)(A) (2010) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2010). A trial court should consider the following when determining whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2010); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

We note that the trial court's determination of whether the defendant is entitled to an

-6-

alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. See T.C.A. § 40-35-303(a) (2010). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. T.C.A. § 40-35-303(b) (2010). In addition, "the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303(b) (2010), Sentencing Comm'n Cmts. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4) (2010). Finally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

Swaney specifically contends that the trial court erred in determining the length of his sentence because it failed to consider (1) that he called 911 to report his daughter's health emergency and (2) that he cooperated with authorities. He further argues that the trial court erred in determining the manner of sentence because it did not "attribute sufficient weight" to his minor criminal history or the fact that he had never been on probation. In imposing sentence, the trial court provided a thorough review of Swaney's case and stated, in pertinent

part, the following:

Further, you had argued that he was cooperative as a mitigating factor and that he assisted and he was cooperative with the authorities. The Court, for the purposes of finding of fact, I can find for the purposes of the record that he was cooperative in that he appeared, but I find that he was uncooperative in that he was not truthful. And just appearing and telling officers an untruth is not for purposes of a sentencing hearing something with which I am willing to say that he was cooperative.

In fact, what we have heard today through Sergeant Pryor's testimony was that there was an attempt from the very beginning of this defense to blame it on another child. So, I do not find that he was cooperative.

. . . .

I have looked at the prior criminal history of the Defendant. And that factor goes on to say, "or lack thereof." I think for the purposes of the record the two driving offenses speak for themselves. They are there. Does the Court give them significant weight? At this time, I feel that I cannot, based on the sentencing guidelines. . . .

Next is whether or not the Defendant might reasonably be expected to be rehabilitated, potential or lack of potential for rehabilitation, including that during the period of probation the Defendant will commit another crime. I think that that factor–there is no proof that he has a long criminal history, there is no proof that he could not be rehabilitated. There have been no attempts. That factor weighs in his favor.

Whether or not it reasonably appears that the Defendant will abide by the terms of probation. That weights in his favor, because there's no proof that he's ever been on probation.

Whether or not the interest of society in being protected from possible future criminal conduct of the Defendant are

great. That is always a difficult factor for the Court to consider, because as [defense counsel] argued and as the State's proof bore out, it was hard to predict that this would have happened in the first place. . . . And I simply cannot with any type of certainty say that this wouldn't happen again. . . . So, that creates a problem with me finding that factor one way or another. It just goes to the nature of the offense and the Defendant's own statements that this happened because he was aggravated and agitated.

Whether or not measures less restrictive than confinement have frequently or recently been applied. That weighs in his favor because there have been none.

Whether or not a sentence of full probation would unduly depreciate the seriousness of the offense. . . . .

Mr. Swaney, I don't know if you've looked at these pictures of your child. I don't know if you've read the medical reports. But to state that someone could inflict these type[s] of injuries on an infant and for me to say that giving full probation–well, these injuries–giving you full probation would unduly depreciate the seriousness of the offense. Period.

Whether or not confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses. . . . I will say that with this specific case that for someone to have pled guilty to what you have pled guilty to and for you not to get any confinement would not provide a deterrent to others likely to commit a similar crime.

And lastly, whether or not the offense was particularly enormous, gross, or heinous. I will state that the injuries are beyond that typically received in evidence on a child abuse D felony case. . . . I've used the terms tragic and shocking. They are beyond what we typically do receive as evidence. . . .

Is confinement necessary to avoid depreciating the seriousness of the offense . . . or confinement is particularly suited to provide an effective deterrence to others likely to

commit similar offenses. That does apply.

Swaney does not challenge the enhancement factors applied by the trial court. Instead, Swaney apparently challenges the weight the trial court assigned to factors he offered to mitigate his sentence. Under the 2005 amendments to our sentencing act, "a trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened." State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). More importantly, under our current sentencing law, a defendant cannot appeal the weight the trial court affords to a particular mitigating or enhancing factor. Id. As reflected above, the trial court considered the fact that Swaney "appeared" as cooperation with authorities. This was negated, in part, due to Swaney's attempt to blame the victim's injuries on his three-year-old son. The court determined that Swaney had been untruthful. Swaney's argument that the trial court failed to consider that he called 911 is incorrect. This evidence was presented at the sentencing hearing and considered by the trial court. Our review of the record further reflects that the trial court considered the sentencing principles and all the relevant facts and circumstances in this case. We conclude, based on the record, that the trial court applied the appropriate enhancement and mitigating factors in arriving at the length of Swaney's sentence.

Although Swaney makes no specific argument regarding the denial of an alternative sentence, he insists that the trial court should have imposed split-confinement. Here, the trial court imposed a sentence of complete confinement based upon the need to avoid depreciating the seriousness of the offense as well as the need to deter others from committing a similar offense. In order to deny an alternative sentence based on the seriousness of the offense pursuant to Code section 40-35-103(1)(B), the circumstances of the offense must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree[.]" State v. Bottoms, 87 S.W.3d 95, 103 (Tenn. Crim. App.2 001) (citations and internal quotations marks omitted); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App.1991). The trial court explicitly found, and we agree, that the seriousness of the offense required a denial of alternative sentencing in this case. The record shows that the nine-month-old victim suffered extensive injuries including a "parietal subdural hematoma," which was the result of non-accidental trauma. She was malnourished, dehydrated, and bruised all over her body. She was classified in the lower five percentile for her age and weight. She was also unable to hold up her head or sit up on her own, which was considered abnormal. The trial court stated that "the injuries [were] beyond that typically received in evidence on a child abuse case." Upon our review, the record fully supports the sentence imposed by the trial court. Swaney has failed to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded sentences which reflect a proper application of the purposes and principles of our statutory scheme.

-10-

Accordingly, he is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE